IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs September 9, 2014

## STATE OF TENNESSEE v. JEFFERY SCOTT HUTCHINSON

**Appeal from the Circuit Court for Bedford County**
**Nos. 17535 & 17609     Franklin Lee Russell, Judge**

**No. M2013-02746-CCA-R3-CD - Filed October 9, 2014**

The Defendant, Jeffery Scott Hutchinson, was convicted by a Bedford County jury of one count of initiating a process intended to result in the manufacture of methamphetamine, one count of promoting the manufacture of methamphetamine, and two counts of simple possession of methamphetamine. He was thereafter convicted by a separate Bedford County jury of failure to appear. At a consolidated sentencing hearing, the trial court imposed an effective eighteen-year sentence for all of these convictions. In this direct appeal, the Defendant argues that the evidence is insufficient to support a jury's finding that he knowingly failed to appear and that the trial court erred in imposing consecutive sentencing. Finding no error, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and TIMOTHY L. EASTER, JJ., joined.

James Ronald Tucker, Jr. (at trial and on appeal), Shelbyville, Tennessee, and Clay Parker (at trial), Shelbyville, Tennessee, for the appellant, Jeffery Scott Hutchinson.

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Senior Counsel; Robert James Carter, District Attorney General; and Richard A. Cawley and Brooke C. Grubb, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION
### FACTUAL BACKGROUND

On November 19, 2012, a Bedford County grand jury returned a four-count indictment against the Defendant (Case No. 17535), charging him with initiating a process intended to result in the manufacture of methamphetamine, a Class B felony; promoting the manufacture

of methamphetamine, a Class D felony; possessing .5 grams or more of methamphetamine for "resale,"[1] a Class B felony; and possessing .5 grams or more of methamphetamine with intent to deliver, a Class B felony. See Tenn. Code Ann. §§ 39-17-417, -433, -435. These charges stemmed from the following events: On August 11, 2011, the authorities were notified that Jonathan L. Wiser was attempting to purchase Sudafed tablets—which contain pseudoephedrine, a precursor to manufacturing methamphetamine—at a CVS pharmacy in Shelbyville. Wiser testified that he agreed to purchase these pills for the Defendant in exchange for "a small bag of pot" while the Defendant waited in the parking lot. Officers observed Wiser exit the store and approach a blue Chevrolet truck, which was driven by a white male, later identified as the Defendant. Officers followed the Defendant from the CVS parking lot.

When the Defendant stopped at a local residence, Officer Shane George of the Shelbyville Police Department approached the Defendant, stating his knowledge of the Defendant's possession of pseudoephedrine tablets, and asked the Defendant for consent to search the truck and the Defendant's person. The Defendant gave his consent. On the Defendant's person, Officer George discovered a pack of cigarettes in his shirt pokcet, which held one small plastic bag containing methamphetamine and coffee filters with methamphetamine inside. The CVS-brand pseudoephedrine tablets, two "fresh" lithium batteries, and another plastic bag in the console containing additional pseudoephedrine tablets were found inside the Defendant's truck.

The Defendant was advised of his Miranda[2] rights and waived them. When asked about the recently purchased pseudoephedrine tablets, the Defendant stated that he intended to take these tablets to Donny Gannon, a well-known methamphetamine manufacturer according to Officer George. When that information failed to pan out, the Defendant admitted he was a regular methamphetamine user and often manufactured methamphetamine, both for personal use and to exchange for more boxes of pseudoephedrine tablets.

The Defendant then led the officers to his residence and consented to a search. Officers located more pseudoephedrine tablets, mason jars with methamphetamine residue, "open blister packs that the pseudoephedrine had been taken from," and a gallon-size container of muriatic acid. According to Officer George, the Defendant admitted that he had previously used the muriatic acid in the manufacturing process. The Defendant showed the officers the enclosure where he manufactured the methamphetamine and told the officers that, when he was through manufacturing, he would burn the remnants in a fire pit. Officer

---

[1] Tennessee Code Annotated section 39-17-417 contains no mention of the term "resale."

[2] See Miranda v. Arizona, 384 U.S. 436 (1966).

George observed within the fire pit "busted casings of the lithium batteries" and "a crushed gallon-size container of Coleman camping fuel."

The Defendant was released on bail for the drug charges (Case No. 17535) following his arraignment, and the matter was reset for December 17, 2012. A new attorney was appointed for the Defendant on December 17,[3] and that attorney asked for a continuance so he could "have more time to talk" with the Defendant. The court asked if January 14 was permissible, and the attorney responded affirmatively. The court then discussed the payment of fees with the Defendant; at the conclusion of which, the court asked, "You know your next court date, right?" The Defendant replied, "January 14th," and the court further informed him, "It will be at 9:00 in the morning." That concluded the hearing. An order was also entered setting the next court date for January 14, 2013, at 9:00 a.m. Although the date was clearly referenced in both the courtroom and the order, the day of the week he was scheduled to appear was not stated. The Defendant failed to appear on Monday, January 14, and he was indicted for that offense, a Class E felony, on February 25, 2013 (Case No. 17609). See Tenn. Code Ann. § 39-16-609.

The Defendant proceeded to trial on the drug charges. A jury found him guilty as charged of initiating a process intended to result in the manufacture of methamphetamine and of promoting the manufacture of methamphetamine and of two counts of the lesser-included offense of simple possession of methamphetamine, a Class A misdemeanor. He, thereafter, was tried separately for the failure to appear charge. At his trial on that charge, the following proof was adduced. The transcript of the December 17, 2012 hearing ordering the Defendant to appear on January 14, 2013, was entered as exhibit. Diane Clanton, deputy clerk for the circuit court's criminal division, identified the order entered by the trial court directing the Defendant to appear on said date. Ms. Clanton testified that she usually provided copies of all orders to the district attorney general's office but did not normally provide them to defense counsel "unless it [was] the public defender" or unless defense counsel asked for it. Ms. Clanton believed that the Defendant came to her office on January 15, 2013, although she could not state this with certainty.

Tabitha Philpot, with the Bedford County Sheriff's Department, testified that she was the circuit court liaison for the sheriff's department and that the trial judge for the December 17, 2012 and January 14, 2013 proceedings normally held court on Mondays. Ms. Philpot confirmed that the Defendant was instructed in court to return on January 14 at 9:00 a.m. and that he was not present on January 14 as instructed. Ms. Philpot was responsible for telling defendants when they were to appear and for noting who did and who did not appear. She believed that the Defendant was released on bond when he failed to appear because he was

---

[3] The Public Defender's Office had been granted permission to withdraw.

3

not in custody at that time. On cross-examination, Ms. Philpot confirmed that general sessions court was held on Tuesdays and Wednesdays "and sometimes on Thursdays."

The Defendant and his mother, Ruth Ann LaLonde, both testified, claiming that the Defendant appeared a day late, Tuesday, January 15, and that his failure to appear on Monday, January 14, was unintentional. According to Ms. LaLonde, who drove the Defendant to court on occasion, they believed it was on Tuesday because "any other time he came, it was always on a Tuesday." Ms. LaLonde claimed that, due to her age, she was "not really good with dates anymore." Once they arrived on January 15, the Defendant went to the clerk's office and paid his fees according to Ms. LaLonde. She also testified that, prior to January 14, the Defendant had appeared at every court date scheduled and that he reported to court later during the week of January 14.

The Defendant testified that this charge was initially handled in general sessions court before being transferred to circuit court and that those previous court appearances in general sessions court always happened on Tuesdays. The Defendant conveyed that he had multiple attorneys throughout these proceedings, that he had difficulty communicating with the attorney appointed for him on December 17, and that the attorney was supposed to file a motion to withdraw on January 14. The Defendant claimed that he had "every intention of showing up for court on the 14th of January" and stated that he had paid his bond and attorneys fees as required. He acknowledged that he heard the district attorney say he was suppose to return on a Monday but that he nevertheless believed the correct day to be a Tuesday. He further confirmed that the trial judge instructed him on his next court date, stating January 14. The Defendant claimed that his "days blend[ed] together" because he was retired. He also stated that he was a drug addict prior to his incarceration, which caused him difficulty with remembering days.

According to the Defendant, upon his arrival at the courthouse on January 15, he went to the clerk's office, where he paid Ms. Blanton a court fee, and she told him that he had missed his court date, that it was the day before. She told him to contact his attorney, but the Defendant believed that his attorney had filed a motion to withdraw and, therefore, that he did not have one. The Defendant claimed that she then suggested that he go speak with someone in the district attorney's office, which he did. However, according to the Defendant, "the lady that was behind the desk" at the district attorney's office "said no one was in the office." The Defendant claimed he left his name and number with her but never received a call, so he contacted his bondsman two days later. He met his bondsman that Friday, and they proceeded to the police station, where he was booked and another hearing date was set. The Defendant asserted that he had never missed another court date.

4

The Defendant admitted on cross-examination that his previous court date of December 17, 2012, was a Monday, not a Tuesday, which was contrary to his assertion that he always appeared in court on Tuesdays. The jury found the Defendant guilty of failure to appear on his scheduled date, January 14, 2013.

A consolidated sentencing hearing was held. At the outset of the hearing, the trial court merged the two simple possession of methamphetamine convictions into one count. The presentence report was then entered into evidence, and the Defendant made an allocution statement. The Defendant said,

> I just wanted to let you know I got caught up in a bad thing. And I've cooperated with them ever since that arrest. I cooperated with [Officer] George. I've helped them at the jail with some inmates that were, had . . . weapons, [were] going to stab a guard. I helped them with that. I just wanted to let you know that I've been helping . . . them out.

No other proof was presented.

Following the arguments of counsel, the trial court applied the following factors to the Defendant's sentences in Case No. 17535: enhancement factors (1) the Defendant had a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range; (8) the Defendant, before trial or sentencing, failed to comply with the conditions of a sentence involving release into the community; and (13) at the time the felony was committed, the Defendant was released on probation[4]; and mitigating factors (1) the Defendant's criminal conduct neither caused nor threatened serious bodily injury; and (9) the Defendant assisted the authorities in uncovering offenses committed by other persons or in detecting or apprehending other persons who had committed the offenses. See Tenn. Code Ann. §§ 40-35-113, -114. The trial court then imposed Range I[5] terms of eleven years for initiating a process intended to result in the manufacture of methamphetamine; three years for promoting the manufacture of methamphetamine; and eleven months and twenty-nine days for the simple possession of methamphetamine. Addressing the consecutive nature of these charges, the trial court ordered the eleven-year and three-year sentences to be served consecutively to one another, finding that the

---

[4] The trial court stated that the Defendant was on bond, but it is clear from the presentence report he was on probation. The trial court later corrected this error.

[5] The district attorney agreed that these were Range I sentences in Case 17535 due to his failure to provide the proper notice to defense counsel. Under both a statute and the Tennessee Rules of Criminal Procedure, the State must file notice of its intent to seek enhanced punishment at least ten days prior to trial or the acceptance of a guilty plea. See Tenn. Code Ann. § 40-35-202(a); Tenn. R. Crim. P. 12.3(a).

Defendant had an extensive criminal record and that the Defendant was on probation at the time he committed these offenses. See Tenn. Code Ann. § 40-35-115(2) & (6). The misdemeanor sentence was to be served concurrently to those counts, resulting in a total effective sentence of fourteen years as a Range I, standard offender. The trial court further denied any form of alternative sentencing in Case No. 17535.

The trial court then addressed the failure to appear conviction (Case No. 17609), finding the Defendant to be a Range II, persistent offender for purposes of that conviction. Using the same enhancement factors, the trial court enhanced the sentencing term to four years. The trial court determined that the consecutive service of the four-year sentence to the effective sentence in Case 17535 was mandatory pursuant to Rule 32(c) of the Tennessee Rules of Criminal Procedure. Again, any form of alternative sentencing was denied.

The Defendant filed a timely appeal, challenging the sufficiency of the evidence supporting his failure to appear conviction and the imposition of consecutive sentencing.

ANALYSIS

First, the Defendant argues that the evidence was insufficient to support his conviction for failure to appear.[6] Specifically, he maintains as follows: "(1) that the State failed to establish that he knowingly failed to appear in court on the 14th day of January 2013; and (2) that there is no evidence to refute [the] Defendant's claim that he misunderstood, or misremembered [sic], the date." The State counters that this case involves a question of credibility of the witnesses, and the jury discredited the Defendant's excuse for failing to appear. We agree with the State.

An appellate court's standard of review when a defendant questions the sufficiency of the evidence on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). This court does not reweigh the evidence; rather, it presumes that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the State. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions regarding witness credibility, conflicts in testimony, and the weight and value to be given to evidence were resolved by the jury. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997).

---

[6] The Defendant does not challenge on appeal the sufficiency of the evidence supporting any of his convictions in Case No. 17535.

A guilty verdict "removes the presumption of innocence and replaces it with a presumption of guilt, and [on appeal] the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict." Id.; State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). "This [standard] applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of [both] direct and circumstantial evidence." State v. Pendergrass, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999). The standard of proof is the same, whether the evidence is direct or circumstantial. State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011). Likewise, appellate review of the convicting evidence "is the same whether the conviction is based upon direct or circumstantial evidence." Id. (quoting State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009)). The duty of this court "on appeal of a conviction is not to contemplate all plausible inferences in the [d]efendant's favor, but to draw all reasonable inferences from the evidence in favor of the State." State v. Sisk, 343 S.W.3d 60, 67 (Tenn. 2011).

The Defendant was convicted of a violation of Tennessee Code Annotated section 39-16-609, which, as relevant here, provides that "[i]t is unlawful for any person to knowingly fail to appear as directed by a lawful authority if the person . . . [h]as been lawfully released from custody, with or without bail, on condition of subsequent appearance at an official proceeding . . . at a specified time or place[.]" Tenn. Code Ann. § 39-16-609(a)(4). The statute further provides, "It is a defense to prosecution under this section that . . . [t]he person had a reasonable excuse for failure to appear at the specified time and place." Tenn. Code Ann. § 39-16-609(b)(2).

Thus, the requisite mental element expressed in the proscriptive statute is knowing. See Tenn. Code Ann. § 39-11-302(b). Establishing the mental state of knowing "will usually depend on inference and circumstantial evidence." State v. Brown, 915 S.W.2d 3, 7 (Tenn. Crim. App. 1995). The evidence was clear that the Defendant was in court on Monday, December 17, 2012; that he appeared before the judge; that he was appointed counsel; that his counsel requested that the case be continued; that the court offered the date of January 14, 2013; that trial counsel agreed to that date; that the court then set the case for that date at 9:00 a.m.; and that the court confirmed this information with the Defendant, who responded affirmatively. The State's evidence showed that the Defendant was aware of his January 14, 2013 court date, which was told to him in open court on Monday, December 17, 2012. See, e.g., State v. Timothy Aaron Baxter, No. W2012-02555-CCA-R3-CD, 2014 WL 29102, at *3 (Tenn. Crim. App. Jan. 3, 2014) (holding that the evidence was sufficient to support a failure to appear conviction where "the defendant was in court on May 9, 2011, that he appeared before the judge at the podium, that he was appointed counsel, that he at some point provided contact information to the assistant public defender, that his counsel requested that the case be set for June 13, 2011, and that the court set the case on that date at 8:00

a.m."). Moreover, the Defendant confirmed his knowledge of the date and further admitted to hearing the district attorney say that the day was a Monday.

The Defendant claims that, although he was aware of his scheduled court date, he believed January 14, 2013, was a Tuesday; that he had previously appeared on Tuesdays in general sessions court; that he appeared at the courthouse on Tuesday, January 15; and that he checked in with his bail bondsman after his missed court date. However, it was the jury's function to determine whether the claim was truthful and, even if truthful, whether the excuse was reasonable. The jury heard the testimony and, based upon their verdict, did not resolve the determination in the Defendant's favor. See, e.g., State v. Jimmy Sprague, No. E2010-00288-CCA-R3-CD, 2011 WL 3329814, at *6 (Tenn. Crim. App. Aug. 3, 2011) ("Although there was some circumstantial evidence in the record that might support an inference that the defendant had a reasonable excuse for missing his court date, including the fact that he checked in with his bail bondsman after his court date and may have suffered from a heart condition, the jury was free to conclude that this circumstantial evidence did not suffice to give rise to a reasonable inference that the defendant had a reasonable excuse for failing to appear.") We conclude, therefore, that sufficient evidence was presented to establish the Defendant's knowing failure to appear for his scheduled court date.

As his second issue, the Defendant argues that the trial court erred by imposing consecutive sentences. Specifically, he contends that the trial court erred by sentencing him as follows: "(1) to serve counts I and II, from Trial 1, consecutive to one another; (2) to serve count 1, from Trial 2 consecutive; and (3) determining that consecutive sentencing was mandatory in the case of failure to appear."[7] The Defendant further argues that "the punishment does not fit the crime" and that having him serve eighteen years in confinement is a waste of the State's financial resources. The State responds that the trial court imposed an effective sentence consistent with the purposes and principles of the Sentencing Act and that the Defendant has failed to overcome the presumption of reasonableness afforded that decision or show that the trial court abused its discretion. Again, we agree with the State.

The trial court ordered consecutive sentencing on counts 1 and 2 in Case No. 17535, finding two statutory criterion applicable to the Defendant: (1) "The defendant is an offender whose record of criminal activity is extensive"; and (2) "The defendant is sentenced for an offense committed while on probation[.]" See Tenn. Code Ann. § 40-35-115(b)(2) & (6).

---

[7] Other than this one sentence outlining his specific grievances with the trial court's sentencing decision, the Defendant argues in generic terms that his sentence is excessive. He does not discuss the application of enhancement and mitigating factors to increase the length of his sentencing terms and, therefore, neither will we. See Tenn. R. App. P. 27(a)(7); Tenn. R. Ct. Crim. App. 10(b) ("Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court.").

The trial court further determined that consecutive service of the sentence in Case No. 17609 to the sentence in Case No. 17535 was mandated by Tennessee Rule of Criminal Procedure 32(c). That rule provides,

> When a defendant is convicted of multiple offenses from one trial or when the defendant has additional sentences not yet fully served as the result of convictions in the same or other courts and the law requires consecutive sentences, the sentence shall be consecutive whether the judgment explicitly so orders or not. This rule shall apply . . . to a sentence for a felony committed while the defendant was released on bail and the defendant is convicted of both offenses[.]

Tenn. R. Crim. P. 32(c)(3)(C).

Our supreme court has recently held that "the abuse of discretion standard, accompanied by a presumption of reasonableness, applies to consecutive sentencing determinations" "if [the trial court] has provided reasons on the record establishing at least one of the seven grounds listed in Tennessee Code Annotated section 40-35-115(b)." State v. James Allen Pollard, -- S.W.3d --, No. M2011-00332-SC-R11-CD, 2013 WL 6732667, at *8-9 (Tenn. 2013). Further, "[s]o long as a trial court properly articulates reasons for ordering consecutive sentences, thereby providing a basis for meaningful appellate review, the sentences will be presumed reasonable and, absent an abuse of discretion, upheld on appeal." Id. at *9 (citing Tenn. R. Crim. P. 32(c)(1) ("The order [for consecutive sentences] shall specify the reasons for this decision and is reviewable on appeal."); see also Bise, 380 S.W.3d at 705.

Here, at the sentencing hearing, trial counsel acquiesced to the trial court's statement that the Defendant had an extensive criminal record. His criminal record detailed in the presentence report is undeniably extensive, including convictions in three States, several involving methamphetamine, spanning almost thirty years. It was also noted at the sentencing hearing that the Defendant was on release here in Tennessee and in Oklahoma at the time he committed these offenses. The presentence report confirms this finding. The Defendant makes no real argument on appeal that subsections (2) and (6) of section 40-35-115(b) do not apply to him, asserting only that his total sentence is excessive. Consecutive sentencing is an appropriate and justly deserved sanction. See Tenn. Code Ann. § 40-35-102(1). We conclude that the trial court's finding that these criteria applied to the Defendant was properly articulated, that there was no abuse of discretion, and that, for those reasons, its determination is presumed reasonable.

The Defendant further argues that the trial court erred in determining that consecutive sentencing was mandatory in the case of his failure to appear conviction. However, the language of Rule 32(c)(3)(C), quoted above, is clear that service in this case is mandatory. Moreover, mandatory consecutive service is also designated by section 40-20-111 (b), which states,

> In any case in which a defendant commits a felony while the defendant was released on bail in accordance with chapter 11, part 1 of this title, and the defendant is convicted of both offenses, the trial judge shall not have discretion as to whether the sentences shall run concurrently or cumulatively, but shall order that the sentences be served cumulatively.

As for the Defendant's argument about the cost of his incarceration, it neither overcomes the presumption of reasonableness nor demonstrates an abuse of the trial court's discretion. Accordingly, we conclude that consecutive service of the Defendant's sentences was reasonable and that the trial court did not abuse its discretion.

## CONCLUSION

In sum, we conclude that the evidence was sufficient to support the failure to appear conviction and that the imposition of consecutive sentencing was proper. Accordingly, we affirm the judgments of the trial court.

_____
D. KELLY THOMAS, JR., JUDGE

10